<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALLA GUREVICH, individually, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PNC BANK,<br><br>*Defendant.* | Civil Action No.: 24-11376<br><br>**OPINION AND ORDER**<br><br>August 19, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** is before this Court upon Defendant PNC Bank's ("PNC" or "Defendant") Letter Motion requesting the transfer of this case to the United States District Court for the Western District of Pennsylvania. (ECF 5, "Def. Mot.") Plaintiff has consented to PNC's request to transfer. (Def. Mot. at 1.) The Court has decided this Motion upon the submissions of Defendant, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Defendant's Letter Motion to transfer this case to the Western District of Pennsylvania is **GRANTED**.

**WHEREAS** this action arises from Plaintiff Alla Gurevich's ("Gurevich" or "Plaintiff") December 20, 2024 Class Action Complaint against PNC for alleged violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a *et seq.*, and the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq.* (ECF 1, "Compl." ¶ 2.) Gurevich, a former PNC mortgage loan officer ("MLO"), specifically alleges that she and similarly situated PNC MLOs in New Jersey were not compensated for their overtime work, and that PNC had "a

common policy and practice…of discouraging the recording of all hours worked" in order to avoid paying MLOs overtime wages. (*Id.* ¶¶ 29-32, 34; *see also id.* ¶¶ 1-2, 6, 17, 35, 39, 41-42, 48-55, 63-64); and

**WHEREAS** on September 11, 2024, a former PNC MLO, Anthony Acampora, commenced a proposed class action suit in the Western District of Pennsylvania on behalf of himself and similarly situated MLOs, alleging that PNC violated the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL). (Def. Mot. at 1-2, Exhibit A.). That action, captioned *Anthony Acampora v. PNC Bank*, Civil Action No. 24-01296, is currently pending in the Western District of Pennsylvania (the "Acampora Action").[1] (*Id.* at 3, Exhibit A.). In that action, Acampora, like Gurevich here, alleges that PNC failed to pay overtime wages to MLOs, and maintained a "common policy, practice and custom" of discouraging MLOs from accurately recording their hours worked. (Acampora Action, ECF 9 ¶¶ 22, 24, 44-45, 57); and

**WHEREAS** on February 28, 2025, PNC filed a Letter Motion seeking transfer of this matter to the Western District of Pennsylvania. (ECF 5.). In its Letter Motion, PNC argues that transfer to the Western District of Pennsylvania is warranted pursuant to the "first-filed rule" and 28 U.S.C. § 1404(a). (*Id.* at 2-3.). Gurevich, through counsel, consented to PNC's request to transfer. (Def. Mot. at 1); and

**WHEREAS** the first-filed rule derives from the principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Muhammad v. State Farm Indem. Co.*, 719 F. Supp. 3d 397, 400 (D.N.J. 2024) (quoting *Smith v. McIver*, 22 U.S. 532, 535 (1824)). The first-filed rule "ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district

---

[1] Acampora is represented in the Acampora Action by Gurevich's counsel.

2

courts." *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012) (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). Even if these factors apply, the Court has discretion to apply or decline to apply the rule. *See E.E.O.C.*, 850 F.2d at 976-77; and

**WHEREAS** here, the Court finds that the first-filed rule applies. First, the Acampora Action commenced on September 11, 2024, whereas Gurevich's action commenced on December 20, 2024. (*See* Acampora Action, ECF 1; Compl.) As such, the Acampora Action was filed first; and

**WHEREAS** second, the same issues requirement is met. "[T]o establish that two [putative class action] cases involve the same issues, only a 'high degree of similarity between the first-filed action and the later-filed case' is required." *Muhammad*, 719 F. Supp. 3d at 403 (quoting *Mazzei v. Heartland Payment Sys., LLC*, No. 20-14929, 2023 WL 6121318, at *4 (D.N.J. Sept. 19, 2023)). However, "[overlapping] subject matter is the key; exact identity of claims is not required." *Id.* (quoting *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011)). Here, there is a "high degree of similarity" and overlap between the subject matter of the Acampora Action and Gurevich's Complaint. *See Muhammad*, 719 F. Supp. 3d at 404. Both the Acampora Action and Gurevich's Complaint in the instant action allege that PNC failed to pay MLOs overtime wages and maintained and engaged in a pattern and practice of discouraging MLOs from accurately logging their overtime hours. (*See* Acampora Action, ECF 9 ¶¶ 22, 24, 44-45, 57; Compl. ¶¶ 1-2, 16-17, 29-30, 32, 34, 39, 41-42, 48-55, 63-64.). Although the Acampora Action involves FLSA and NYLL claims, and the Gurevich Complaint involves NJWHL and NJWPL claims, identical claims are not required to meet this prong. *See Catanese*, 774 F. Supp. 2d at 689 (finding that two

3

putative class actions filed in separate district courts met the same issues requirement even though they involved different state laws); and

    **WHEREAS** third, the Acampora Action and instant action involve the same parties. When the first-filed rule is applied to two putative class actions against the same defendant, "classes, and not the [named] class representatives, are compared." *Muhammad*, 719 F. Supp. 3d at 407 (quoting *Owen v. Nestle Healthcare Nutrition, Inc.*, No. 22-2855, 2023 WL 2367983, at *2 (D.N.J. Mar. 6, 2023)); *see also Catanese*, 774 F. Supp. 2d at 688; *MacLean v. Wipro Ltd.*, No. 20-3414, 2020 WL 7090746, at *8 (D.N.J. Dec. 4, 2020) (finding that underlying putative class actions met the same parties prong even though the named class representatives differed because the actions involved the same singular defendant and identical classes of plaintiffs). The Acampora Action and instant action involve the same defendant and the classes in each action overlap. (Def. Mot. at 3.) Thus, although there are different named plaintiffs in the Acampora Action and the instant action, the same parties requirement is met; and

    **WHEREAS** the Court, having determined that the first-filed rule "fits [the] given circumstance," considers equitable principles and applies the rule. *Muhammad*, 719 F. Supp. 3d at 402, 411; *see also E.E.O.C.*, 850 F.2d at 972, 976-77. The Court sees no reason not to apply the rule. For instance, the Court has not identified bad faith or forum shopping, and the second-filed case—the instant action—is not further along than the Acampora Action. *See E.E.O.C.*, 850 F.2d at 976-77; and

    **WHEREAS** now that the Court has determined that the first-filed rule fits the given circumstance and has exercised its discretion to apply the rule, we must then decide "whether the later-filed action should be dismissed, stayed, or transferred pursuant to 28 U.S.C. § 1404(a)." *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 367 (D.N.J. 2010) (citations omitted); *see also*

*Muhammad*, 719 F. Supp. 3d at 411. The parties request transfer. (Def. Mot. at 1.) The Court agrees that transfer to the Western District of Pennsylvania is appropriate pursuant to § 1404(a); and

**WHEREAS** 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[2] *See also Santi v. Nat'l Bus. Recs. Mgmt.*, LLC, 722 F. Supp. 2d 602, 606 (D.N.J. 2010). Further, in addition to § 1404(a)'s three enumerated factors of "convenience of parties, convenience of witnesses, or interests of justice," courts in the Third Circuit also consider and balance a host of private and public interest factors. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-880 (3d Cir. 1995)[3]; and

**WHEREAS** to determine whether the plaintiff could have originally brought suit in the proposed forum, the transferor court must assess whether the transferee court would have proper venue and personal jurisdiction. *See Crowe v. Johnson & Johnson*, No. 15-6305, 2021 WL 1611245, at *2 (D.N.J. Apr. 26, 2021) (citation omitted); *Beychok v. Baffert*, 717 F. Supp. 3d 392, 401-02 (D.N.J. 2024). Here, Gurevich could have brought this action in the Western District of

---

[2] Although the parties have consented to transfer, the Court will still independently determine whether transfer is proper pursuant to § 1404(a). *See, e.g.*, *Ward v. Stewart*, 133 F. Supp. 3d 455, 459 (N.D.N.Y. 2015) ("[C]onsent of all parties is not a basis for ordering transfer pursuant to § 1404(a). Rather, [t]he transferor court must still conclude that the Section 1404(a) statutory factors of convenience and the interest of justice justify transfer.")

[3] The private factors include:
> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara.*, 55 F.3d at 879 (internal citations omitted). The public interest factors include:
> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted).

Pennsylvania. The Western District of Pennsylvania will have personal jurisdiction over PNC since PNC is headquartered in Pittsburgh, PA. (*See* Compl. ¶ 9); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general [personal] jurisdiction.") (internal quotation marks omitted); *see also Caduceus, Inc. v. Univ. Physician Grp.*, 713 F. Supp. 3d 30, 34 (D.N.J. 2024) (same). The Western District of Pennsylvania also would have personal jurisdiction over Plaintiff because Plaintiff has consented to personal jurisdiction there. *See Zangara v. Nat'l Bd. of Med. Examiners*, No. 22-1559, 2023 WL 6533467, at *4 (D.N.J. Oct. 6, 2023). Venue would also be proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) since PNC is headquartered in Pittsburgh. *See* § 1391(b)(1) ("A civil action may be brought in…a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."); *see also Zangara*, 2023 WL 6533467, at *4 ("a corporate defendant's residence for venue purposes is the same as its citizenship for personal jurisdiction purposes"); and

**WHEREAS** here, the convenience of the parties, interest of justice, and public and private interest factors warrant transfer to the Western District of Pennsylvania. The parties have agreed that transfer to the Western District of Pennsylvania is appropriate; Defendant is headquartered in Pittsburgh, Pennsylvania; and transfer would allow Gurevich and her proposed class of New Jersey MLO plaintiffs to coordinate and consolidate their claims with Acampora and the proposed nationwide class of MLO plaintiffs in the Acampora Action. *See Abushalieh*, 716 F. Supp. 2d at 367-68. Transfer to the Western District of Pennsylvania would also allow PNC to defend itself in a single combined action, while still allowing the Plaintiffs to pursue their common claims. *See id.* at 368. Additionally, transfer would be consistent with the first-filed rule and would promote

judicial economy. *See id.*; *see also Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent.").

Accordingly, **IT IS** on this 19th day of August 2025,

**ORDERED** that Defendant's Letter Motion to transfer this case to the Western District of Pennsylvania (ECF 5) is **GRANTED**; and it is further

**ORDERED** that this action shall be transferred to the Western District of Pennsylvania, to be coordinated or consolidated with *Acampora v. PNC Bank*, Civil Action No. 24-01296, in the discretion of the transferee court.

**SO ORDERED**.

                    */s/ Jamel K. Semper*
                    **HON. JAMEL K. SEMPER**
                    **United States District Judge**

Orig:  Clerk
cc:     Stacey D. Adams, U.S.M.J.
        Parties